KENJI M. PRICE #10523
United States Attorney
District of Hawaii

MICAH SMITH
SARA D. AYABE #9546
MICHAEL NAMMAR
Assistant U.S. Attorneys
United States Attorney's Office
District of Hawaii
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Email:  micah.smith@usdoj.gov
            sara.ayabe@usdoj.gov
            michael.nammar@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

```
FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Dec 19, 2019
SUE BEITIA, CLERK
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAG. NO. 19-01300 WRP |
| | ) | |
| Plaintiff, | ) | CRIMINAL COMPLAINT; |
| | ) | AFFIDAVIT IN SUPPORT OF |
| v. | ) | CRIMINAL COMPLAINT |
| | ) | |
| GLENN ROBERT ALIKA MUTH, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CRIMINAL COMPLAINT**

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

## Count 1
### Possession of Stolen Firearm
### (18 U.S.C. § 922(j))

On or about and between November 10, 2019, and November 11, 2019, both dates being approximate and inclusive, within the District of Hawaii, GLENN ROBERT ALIKA MUTH, the defendant, did knowingly possess a stolen firearm, namely, a Glock 42 semi-automatic handgun bearing serial number ABDD809, knowing and having reasonable cause to believe that the firearm was stolen, which firearm had been shipped and transported in interstate commerce.

All in violation of Title 18, United States Code, Section 922(j).

## Count 2
### Firearm Offense
### (18 U.S.C. § 924(c)(1)(A)(i))

From a precise date unknown, but by at least on or about November 11, 2019, within the District of Hawaii, GLENN ROBERT ALIKA MUTH, the defendant, did knowingly carry firearms during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, that is, the drug trafficking crime charged in Count 3 of this Complaint.

All in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).

2

Count 3
Possession with Intent to Distribute Methamphetamine
(21 U.S.C. § 841)

From a precise date unknown, but by at least on or about November 11,

2019, within the District of Hawaii, GLENN ROBERT ALIKA MUTH, the

defendant, did knowingly and intentionally possess with intent to distribute a

quantity of a mixture or substance containing a detectable amount of

methamphetamine, its salts, isomers, or salts of its isomers, a Schedule II

controlled substance.

All in violation of Title 21, United States Code, Sections 841(a)(1) and

841(b)(1)(C).

Count 4
Theft of Government Property
(18 U.S.C. § 641)

On or about April 15, 2018, within the District of Hawaii, GLENN

ROBERT ALIKA MUTH, the defendant, willfully and knowingly did steal and

purloin goods and property of the United States of a value exceeding $1,000,

namely, MUTH stole two Kawasaki Mule 600 utility vehicles, two military general

mechanics tool kits, and one military issue AN/PSS-14 mine detector, which had a

total value of approximately $26,979, from the Logistical Readiness Center near

Schofield Barracks.

All in violation of Title 18, United States Code, Section 641.

3

Count 5
Theft of Government Property
(18 U.S.C. § 641)

In or about May 2018, within the District of Hawaii, GLENN ROBERT

ALIKA MUTH, the defendant, willfully and knowingly did steal and purloin

goods and property of the United States of a value exceeding $1,000, namely,

MUTH stole a Wells Cargo covered utility trailer and two John Deere Gator A3-T

utility vehicles, which had a total value of approximately $33,895, from the

Logistical Readiness Center near Schofield Barracks.

All in violation of Title 18, United States Code, Section 641.

I further state that I am a Task Force Officer with the Federal Bureau of

Investigation ("FBI"), and that this Complaint is based upon the facts set forth in

//

//

//

//

//

//

//

//

//

4

the attached "Affidavit in Support of Criminal Complaint", incorporated herein by

reference.

DATED:  December ___, 2019, at Honolulu, Hawaii.

CLINT IGE
Task Force Officer, FBI

This Criminal Complaint and Affidavit in support thereof were presented to,
approved by, and probable cause to believe that the defendant above-named
committed the charged crime found to exist by the undersigned Judicial Officer at
___1:01___  __p__ .m. on December _19_ , 2019.

Sworn to under oath before me telephonically, and attestation acknowledged
pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this _19_ day of
December 2019, at Honolulu, Hawaii.



Wes Reber Porter
United States Magistrate Judge

5

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

CLINT IGE, being duly sworn, deposes and states as follows:

1.      I am a Task Force Officer with the Federal Bureau of Investigation

("FBI") and am also a Detective with the Honolulu Police Department ("HPD").

The information contained in this affidavit is based on my personal knowledge and

my training and experience, information obtained from other law enforcement

personnel, and witnesses.  This affidavit is intended merely to show that there is

probable cause for the requested arrest warrant and does not set forth all of my

knowledge about this matter.

### Overview of Two Separate Investigations

2.      The FBI, together with the HPD, Homeland Security Investigations

("HSI"), and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")

has been investigating a recent rash of crimes involving the use of firearms on

Oahu, as well as potentially related offenses.  Among the incidents under

investigation is a November 10, 2019, burglary in which a safe containing

approximately 30 separate firearms was stolen.  As set forth in more detail below,

there is probable cause to conclude that GLENN ROBERT ALIKA MUTH, the

defendant, committed this burglary and thereafter knowingly possessed the stolen

firearms, including a Glock semi-automatic handgun manufactured outside of the

State of Hawaii.  The day after the burglary, MUTH had the stolen Glock and

distribution amounts of crystal methamphetamine in his backpack.  Counts 1

through 3 of the attached Criminal Complaint arise out of this investigation.

3.    The FBI and Army Criminal Investigative Division ("Army CID")

have been separately investigating multiple thefts of utility terrain vehicles, a cargo

trailer, several computers, military uniforms, and miscellaneous tools belonging to

the United States from the Logistical Readiness Center near Schofield Barracks on

Oahu.  As set forth in further detail below, this separate investigation has

established probable cause that GLENN ROBERT ALIKA MUTH, the defendant,

committed at least two of these thefts.  Counts 4 and 5 of the attached Criminal

Complaint arise out of this investigation.

**The Burglary Investigation**

4.    I have spoken with other law enforcement officers and reviewed HPD

reports relating to the burglary that occurred on November 10, 2019, from which I

have learned, in substance and in part, the following:

a.    The burglary occurred at a multi-level single family dwelling

located north of Farrington Highway in Waialua, Hawaii (the "Residence").  The

Residence is located on a four-acre agricultural lot with a paved driveway that

extends south from the Residence and onto Farrington Highway.  A metal gate

with a lockable door secures the entrance/exit area of this driveway (hereinafter

"Gate 1").  There is a second metal gate with a lockable door located about one

hundred feet north of Farrington Highway (hereinafter "Gate 2"), which encloses the residential portion of the property.

b.     The bottom level of the Residence is an open concrete carport area containing a metal storage container that has been converted into an office space. The remodeled container has a metal door that can be locked and secured.

c.     On November 9, 2019, at around 10:00 a.m., the owner of the Residence (hereinafter the "Owner") locked and secured her/his residence, including the lower-level carport office space, and left the property. At around 6:00 p.m. the next day, the Owner missed a phone call from her/his neighbor (hereinafter the "Neighbor"). Later that evening, the Owner listened to a voice message the Neighbor had left for her/him. In the voice message, the Neighbor informed the Owner that she/he had seen an unknown male running out of the Owner's residential gate—that is, Gate 2.

d.     After hearing the Neighbor's voice message, the Owner returned to the Residence and noticed that the door locks to Gate 1 and Gate 2 were damaged and that both gate doors were open. The Owner also observed that her/his carport office door lock and door frame were damaged and that the interior area of the office appeared ransacked. Upon making further checks, the Owner discovered that several items, including her/his metal gun safe, had been stolen from within the office area. The Owner's metal gun safe was a 14.72 cubic foot,

3

twenty-six gun capacity "SENTRYSAFE" gun safe.  There had been numerous items in the gun safe, including thirty separate firearms and several pieces of jewelry.  The Owner also observed that her/his 2016 red-colored John Deer XUV Crossover Utility Vehicle (hereinafter "Quad"), which she/he had left parked near the carport area, was now left unattended outside of Gate 1, near Farrington Highway, with rope and cables tied to the two hitch of the Quad.  The Owner observed drag marks along the driveway between the carport area and Gate 1, and called 911 to report the incident.  HPD responded to the scene and documented the incident.

   e.  The Residence has a surveillance system that captured the events of the burglary, including both video and audio.  The Owner reviewed the surveillance footage and identified a masked male committing the burglary as GLENN ROBERT ALIKA MUTH, the defendant, whom the Owner has known since December 2018.

   f.  The Owner related that her/his friends and family know that she/he is an avid hunter, that she/he possesses numerous firearms (including handguns and rifles), and that it is not uncommon for her/him to carry firearms on her/his person or to discharge her/his firearms at a makeshift firing range while on her/his residential property.  The Owner related that MUTH has seen the Owner's firearms and has been present while the Owner has done target shooting.  The

4

Owner also relayed that MUTH knew that a gun safe was in the Owner's office area and that firearms were stored at the Residence.

g.     The Owner provided the surveillance footage to HPD, and two HPD officers who are familiar with MUTH concluded that the masked individual in the footage resembled MUTH. These officers knew that MUTH had two outstanding state Probation Revocation bench warrants. The next day, on November 11, 2019, at around 10:00 p.m., HPD officers conducted an inspectional check of an illegal gambling establishment located on Iwaena Street in Aiea, Hawaii. There, the officers found MUTH and placed him under arrest for the two outstanding state Probation Revocation bench warrants and for a separate state case involving an allegation that MUTH had altered a motor vehicle serial number.

h.     Upon his arrest, MUTH pointed out a camouflage backpack and a black-colored full-faced motorcycle helmet, which was located on the floor near the gambling establishment's door. MUTH identified these items as his personal property and requested that they be retrieved. As one of the HPD officers picked up the helmet, a black and green colored mask with two eye holes and a mouth hole fell out of the helmet and onto the floor. When the HPD officer then picked up the backpack, he noticed that it was heavy, despite its relatively small size, and that the majority of the weight was concentrated at the bottom of the backpack. When the officer put the backpack back on the ground, he heard a loud thud-like

sound, indicating a heavy object within the backpack.  The officer took the

backpack, helmet, and mask from the ground, as MUTH had requested, and

MUTH confirmed that they all belonged to him.  The officers submitted the items

into HPD evidence.

5.      I have reviewed state court records, which show that GLENN

ROBERT ALIKA MUTH, the defendant, stipulated to the violations of his

probation.  On December 16, 2019, an order granting MUTH's release on his own

recognizance was entered.  MUTH had been in state custody until at least

December 16, 2019, and would not have been able to retrieve any of his property

from the HPD while in custody.

6.      On or about December 10, 2019, your affiant began assisting with a

federal investigation into the November 10, 2019, burglary of the gun safe.  In the

course of my investigation, I have taken the following steps, among other things, to

identify the perpetrator or perpetrators of the burglary:

a.      As part of this federal investigation, I reviewed the surveillance

footage.  Although it is not time-stamped, it captures the burglary that occurred on

November 10, 2019, and shows, among other things, that a male suspect wearing a

black and green colored mask with two eye holes and a mouth hole and a

camouflage backpack commits the burglary with the assistance of a female

suspect.  The surveillance footage shows that the male suspect uses the Owner's

Quad to attempt to drag what appears to be a metal box using rope that is affixed to the Quad.

        b.     Also as part of this federal investigation, I interviewed the Neighbor, who related, in substance and in part, that on November 10, 2019, at around 6:00 p.m., while leaving his own property, she/he observed an unknown male, with a slim build, in his mid to late twenties, running away from Gate 1 on the Owner's property. The unknown male entered a white-colored sporty-looking sedan with a spoiler, which was parked in front of the Owner's property along Farrington Highway, and which drove away in a westbound direction. The Neighbor could not identify the unknown male.

        c.     I also conducted an interview of the Owner, who related, in substance and in part, that she/he was able to recognize GLENN ROBERT ALIKA MUTH, the defendant, in the surveillance footage because of MUTH's physical stature, mannerisms, and distinct walking style. At several points in the surveillance footage, which also captured audio, the suspect speaks and the Owner recognized the suspect's voice to be that of MUTH. The Owner also noted that the suspect in the video "moved with a purpose" as if he had knowledge of the Residence's layout, which MUTH does have. The Owner also related that the male suspect in the video can be seen carrying a yellow "DEWALT" twenty volt grinder tool, which the Owner positively identified as the same grinder she/he had

lent to MUTH in March 2019, and which MUTH never returned.  The Owner

confirmed that MUTH did not have her/his permission to take possession of her/his

personal property (including her/his gun safe and firearms).

        d.     I showed the Owner photographs of the items that the HPD had

recovered during MUTH's arrest on November 11, 2019.  The Owner recognized

the camouflage backpack as a backpack that belongs to MUTH and that the male

suspect is wearing in the surveillance footage of the burglary.  The Owner also

recognized the black and green colored mask as a mask she/he has seen in

MUTH's Chevy on at least five separate occasions.  The mask stands out in the

Owner's mind because she/he remembered thinking that there was no practical

reason for MUTH to own such an item other than to conceal his face.

        e.     I also met with the two HPD officers who earlier had concluded

that MUTH appeared to be the individual in the video surveillance footage of the

burglary.  Both officers explained, in substance and in part, that they recognized

MUTH's overall appearance, gait, hairstyle, physical stature, and mannerisms.

Both officers also noted that there are distinctive features of the backpack and

mask that were recovered during MUTH's arrest on November 11, 2019, that also

appear in the surveillance footage of the burglary.  Among other things, the

backpack recovered on November 11, 2019, has camouflage print, a bellyband

strap, a "Y-shaped" strap that runs from the top of the bag to the bottom of the bag,

and a carabiner attached to the outside of the bag, all of which can be seen in the surveillance footage from the burglary. Among other things, the black and green colored mask recovered from MUTH on November 11, 2019, has two distinctive eye holes and a distinctive mouth hole, as well as green colored lining, all of which can be seen in the surveillance footage from the burglary. The two HPD officers also identified the female suspect in the surveillance footage from the burglary as an individual ("Individual-1") with whom they have had prior police contact. One of the officers noted that on or about December 2, 2019, he encountered Individual-1 while he was on duty in the Pearl City area, at which time Individual-1 stated that she was related to MUTH. Individual-1 then asked the officer, in substance and in part, if MUTH was "only arrested for warrants or did he catch any other cases."

f. I also reviewed HPD reports relating to earlier occasions in which MUTH was suspected of having stolen property belonging to the Owner. These include an incident in April 2019 in which MUTH was suspected of stealing approximately $17,434 worth of tools belonging to the Owner. At the time, MUTH was employed by the Owner's company. After MUTH admitted to stealing the tools, the Owner's criminal complaint was withdrawn and MUTH was terminated from his employment at the Owner's company.

7. After taking the investigative steps described in paragraph 6, above, on December 17, 2019, your affiant applied for, among other things, a federal search warrant to search the camouflage backpack that had been recovered during the November 11, 2019, arrest of GLENN ROBERT ALIKA MUTH, the defendant. The Honorable Wes Reber Porter, United States Magistrate Judge for the District of Hawaii, approved the search warrant on December 17, 2019, and the warrant was executed that same evening.

8. The following items were recovered from the backpack's front upper pouch:

a. A five inch nylon oval shaped zippered pouch containing (i) a 1.5 inch by 1.5 inch clear Ziploc baggie containing a brown colored rock-like substance which, based on my training and experience, resembles cocaine; and (ii) a 4.5 inch glass cylindrical tube with a bulbous end containing a brown and white colored residue within it. Based on my training and experience, the glass cylindrical tube resembles a pipe that is commonly used to ingest crystal methamphetamine, and the multi-colored residue resembles that of crystal methamphetamine.

b. A maroon colored jewelry box containing (i) a 2.5 inch by 2.5 inch clear Ziploc baggie containing a clear crystal-like substance which, based on

my training and experience, resembles crystal methamphetamine; (ii) a copper coin, a gold ring, and two small pieces of jade jewelry.

9.     The following items were recovered from the backpack's large middle pouch (inside of a 5.5 inch by 5.5 inch black colored nylon "Husky" pouch):

a.     An unloaded black colored Glock 42 semi-automatic handgun bearing serial number ABDD809.

b.     A Glock 42 magazine containing six gold colored .380 caliber cartridges.

c.     One loose gold colored .380 caliber cartridge.

d.     A green colored cloth "Crown Royal" bag containing a silver colored Smith and Wesson six-shot revolver handgun, bearing serial number 11809.

10.     I have spoken with Justin Higa, a Task Force Officer with FBI, and a Corporal with HPD, who has been working with me on this federal investigation, from which I have learned, among other things, the following, in substance and in part:

a.     Corporal Higa conducted a check of the Glock 42 handgun described in paragraph 9.a., above, through HPD records and determined that it was registered to the Owner and had been reported stolen in the HPD report relating to the November 10, 2019, burglary described above. After receiving this

11

information, your affiant spoke with the Owner and confirmed that this Glock 42

was one of the firearms that had been located in the gun safe and stolen in the

burglary.

           b.      Corporal Higa also conducted a check of the Smith and Wesson

revolver, bearing serial number 11809, and found no record of it.

           c.      Corporal Higa conducted a field test on the clear crystal-like

substance described in paragraph 8.b., above, which tested positive for the

presence of crystal methamphetamine. The weight of the substance is

approximately 10 grams—twice the amount of methamphetamine required for a

five-year mandatory minimum sentence under Title 21, United States Code,

Section 841(b)(1)(B)—which I know, from my training and experience, is an

amount inconsistent with personal use.

      11.      An ATF Interstate Nexus Special Agent has examined the Glock 42

handgun described in paragraph 9.a., above, and determined that this type of

firearm is manufactured outside the State of Hawaii. In light of that determination,

the firearm must have traveled in interstate or foreign commerce prior to being

possessed in Hawaii.

### The Investigation of the Theft of Government Property

      12.      As noted above, the FBI and Army CID have been separately

investigating multiple thefts of utility terrain vehicles, a cargo trailer, several

computers, military uniforms, and miscellaneous tools from the Logistical

Readiness Center of Schofield Barracks on Oahu.  These thefts occurred in or

around 2018.

      13.    I have reviewed reports prepared by other agents involved in this

separate investigation, from which I have learned, in substance and in part, that the

involvement of GLENN ROBERT ALIKA MUTH, the defendant, in at least two

of these thefts is established through DNA evidence.  In particular, I have learned,

in substance and in part, the following:

      a.    On or about April 15, 2018, two Kawasaki Mule 600 utility

vehicles, two military general mechanics tool kits, and one military issue AN/PSS-

14 mine detector, which had a total value of approximately $26,979, were stolen

from the Logistical Readiness Center near Schofield Barracks.  During the

processing of the crime scene by Army CID investigators, it was determined that

the suspect had likely cut a hole in the chain-link fence to gain access to the

aforementioned stolen items.  While searching the scene, investigators located a

blue in color, latex type glove which appeared dirty, ripped, and in used condition,

and which was found approximately fifty meters from the hole in the fence.  The

glove was sent to the U.S. Army Criminal Investigation Laboratory for processing.

In approximately November 2018, CID investigators received a forensic report

from the U.S. Army Criminal Investigation Laboratory regarding analysis conducted on the piece of hose submitted for testing.

      b.     In or about May 2018, a Wells Cargo covered utility trailer and two John Deere Gator A3-T utility vehicles, which had a total value of approximately $33,895, were stolen from the Logistical Readiness Center near Schofield Barracks. During the processing of the crime scene by Army CID investigators, it was determined that the suspect had likely made entry into the building through a warehouse window. While searching the scene, investigators located an approximately 10 to 12 foot piece of hose, black, red, and bronze in color which appeared to have been used to siphon fuel from a nearby forklift. The hose was collected as an evidentiary item and was subsequently sent to the U.S. Army Criminal Investigation Laboratory for processing.

      c.     Various other items, including additional Gator A3-T utility vehicles, were stolen from the Logistical Readiness Center near Schofield Barracks on other occasions in 2018.

      d.     In approximately November 2018, CID investigators received a forensic report from the U.S. Army Criminal Investigation Laboratory regarding analysis conducted on the swab that had been taken from within the latex glove recovered on April 15, 2018, and from the piece of hose that had been recovered in May 2018. DNA profiles developed from the glove and from the hose were

14

searched in CODIS on approximately September 28, 2018.  The DNA profile from

the glove demonstrated a profile which was consistent with a DNA profile of

MUTH had HPD had previously submitted to CODIS.  The DNA profile from the

hose demonstrated a profile that was consistent at moderate stringency with the

DNA profile of MUTH that HPD had previously submitted to CODIS.

      e.     In or about July 2018, an individual ("Individual-2") was found

to be in possession of two utility terrain vehicles belonging to the United States.

Individual-2 admitted to Army CID agents that she/he knew the items to be stolen

property and identified MUTH, a civilian with no Department of Defense

affiliation, as the individual who had sold her/him the stolen items.

      f.     In or about October 2018, Army CID investigators interviewed

an individual who previously was in a relationship with MUTH ("Individual-3").

Individual-3 told Army CID investigators that MUTH had told her/him that MUTH

was responsible for stealing five Gator A3-T utility vehicles and other military

property from inside a warehouse on what MUTH understood to be a military base.

In addition, Individual-3 explained that on one occasion, MUTH drove her/him to

a warehouse where he showed her/him the location from which he had stolen

items.  Individual-3 also identified Individual-1—the individual who was also

identified as the female suspect who assisted MUTH with the November 10, 2019,

burglary of the Residence, as described in paragraph 6.e., above—as one of

MUTH's co-conspirators in the theft of property from the Logistical Readiness Center.

## CONCLUSION

14.     Based on the foregoing facts, I respectfully submit that probable cause exists to believe that GLENN ROBERT ALIKA MUTH, the defendant, committed the aforementioned offenses.

Respectfully submitted,

CLINT IGE
Task Force Officer, FBI

This Criminal Complaint and Affidavit in support thereof were presented to, approved by, and probable cause to believe that the defendant above-named committed the charged crime found to exist by the undersigned Judicial Officer at __1:01__  p .m. on December __19__, 2019.

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Federal Rule of Criminal Procedure 4.1(b)(2), on this __19__ day of December, 2019, at Honolulu, Hawaii.



Wes Reber Porter
United States Magistrate Judge